Nash, J.
 

 As we understand the charge of the presiding Judge, we entirely agree with him. The defendant had been charged on oath by Nancy Wicks,- a single woman, before two magistrates, with being the father of her bastard child. When the papers were returned to the County Court, the defendant demanded an issue to be made up, as by the act of as-, sembly he was entitled to do. Upon the trial, the examination of Nancy Wicks was read to the jury. The defendant, in order to shew he was not guilty of the charge, gave in evidence a paper writing, drawn up by one Faucett, and witnessed by one Crawford, in which Nancy Wicks acknowledged that the defendant was not the father of the child. Both Faucett and Crawford swore that the paper writing was read over to the woman by each of them, before she signed it; and Faucett swore no threats were used to induce Nancy Wicks to execute it.
 
 She
 
 was then examined on behalf of the State, and admitted that she had signed the paper, and that it had been read over to her by Faucett, before she did so, but not by Crawford who did not have the paper in his hand ;■ and said she had signed it through terror of the threats of the defendant, as told her by Faucett. In behalf of the defendant, it has been urged here before us, that, notwithstanding the act of 1814, if, from the general character of Nancy Wicks, and it is shewn not to be good, and the contradictions to her testimony on the trial, the jury were not satisfied the defendant was the father of her child, he was entitled to an acquittal — and, 2dly, that if the jury were satisfied that Nancy Wicks had sworn corruptly false .on her examination before them, they were bound to acquit the defendant, upon the principle
 
 oi'falsus in unofalsus
 
 
 *184
 

 in omnibus
 
 — and that the court ought so to have instructed the jury. We do not accede
 
 to
 
 either proposition. By the act of 1741, when a man was charged on oath bv a woman, as
 
 9
 
 directed therein, with being the father of her bastard child, and the County Court had made the necessary orders, the defendant was absolutely bound to maintain the child, and no mode was provided, whereby he might escape the odium, or avoid the burthen. The oath of the woman was made plenary proof. Any and every man, under the construction given to the act, was absolutely at the mercy of the most abandoned portion of the community. To avoid this manifest evil, the act of 1814 gives the putative father the right, upon the return of the proceedings to the County Court, to demand that an issue shall be made up, to try whether he be the father of such child; and the act provides that, upon such trial, the examination of the woman, taken on oath before the magistrates, shall
 
 be prima facie
 
 evidence against the person so accused. The object of that act was to give to the party accused an opportunity to shew he was not the father — not to shift the burthen of proof. The error on the part of the defendant consists, in not properly distinguishing between presumptive evidence, properly so called, and
 
 prima facie
 
 evidence. The former is defined to be that, which does not directly prove the controverted fact itself, but how it is to be inferred from circumstances, which usually or necessarily attend such fact. If the"circumstances are such, as may afford a fair and reasonable presumption of the fact to be tried, they are to be received and left to the consideration of the jury, to whom it belongs to determine upon their precise force and effect, and whether they are sufficiently satisfactory and convincing to warrant them to find the fact in issue. It is, in truth, an act of reasoning on their part, 1 Phil. Ev. 155, 156, and the jury are not only at liberty, but it is their duty, to weigh the circumstances, and to determine how they stand, in connection with the fact to be established.
 
 Prima facie
 
 evidence differs in this — it is such evidence, as, in judgment of law, is sufficient to establish the fact in controversy; and, if not rebutted, remains sufficient for
 
 *185
 
 the purpose. The jury are bound so to consider it, and in the absence of controlling evidence, it becomes conclusive of the' fact.
 
 Kelly
 
 v. Jackson, 6 Peters Rep. 632.
 
 Carver
 
 v.
 
 Jackson,
 
 4 Peters Rep. 1. The act of 1814makes the examination of the female, taken as the act directs,
 
 prima facie
 
 evidence of the fact in controversy, to wit, the paternity of the child — not only such evidence as the jury are at liberty to obey,'but which, they are bound to obey, as a part of the la#
 
 of
 
 the case before them. Such, also, is the law with respect to the trading with slaves. If a slave is permitted to remain in a store, after night, lor fifteen minutes with the door shut, or shall be seen after-night to carry any thing' into a store for sale and nof bring it out, it shall be presumptive evidence of an illicit trading. Rev. Stat. ch. 34, s. 78. Here the law has said, these facts, when proven, shall be súffieient of themselves, to shew a violation of the law, when unexplained. In each cale,' the labor .of shewing innocence devolves upon the accusednor does this violate the principle, that every man is to be considered innocent of a criminal charge, uhtil the State has shewn his guilt. The law has a right to prescribe what shall be sufficient to put the accused' on his defence. In the case now before us, the severity of the act of 1741 is mitigated by that of 1814'. The legislature has said the affidavit of the woman shall not,' as formerly; be ¿onclúsi'vé f the individual may, if he can, shew that
 
 He is not guilty;
 
 but evidence léss than*ibis shall not prevail to set aside her oath. If, therefore, only doubt is excited' by the evidence for the' defence, the evidence óf the affidavit' must prevail.' The defendant has nof done what he undertook to do, that is, shewn that he is not guilty. The act of 1814, did not intend so far to alter the provisions of that of 1741,' as to shift the labor from the defendánt to the State. This view is strongly confirmed by that portion of the act, which compels the defendant to pay the costs of the trial of the issue,' tVhether hé is successful or not. It canéot, therefore, be sufficient for the defendant to shew, that at the time the accusation was made,' or at the time of the trial,' the woman was' óf bad character.. The law makers knew,' the in
 
 *186
 
 stances would be few, if any, in which that would not be the case.
 

 Nor do we see that the second objection can avail the de-fen(jank
 
 Yfe
 
 understand his Honor as instructing the jury, that, if they were satisfied Nancy Hicks, upon her examination before them; had sworn corruptly false, it would in this case go only to her credibility, and, if she were set aside, it would not, of itself, invalidate the examination taken before the magistrate. The question would still remain- for them to answer — has the defendant shewn to their satisfaction he was not the father of the child ? That was the issue he had ur-r-dertaken to establish. In this opinion we concur. If, at the time she made her affidavit, she was an incompetent witness against'the defendant, as if she was a colored person, or had, before then been convicted of perjury, the defendant might have the order of filiation quashed, as being founded on incompetent evidence. But upon an issue that question cannot arise, and the examination would be evidence by force of the act. But if, at the time she was examined before the magistrates, she was competent, a subsequent disability, as by a conviction of perjury, would have no other effect than to exclude her from being a witness before the jury. The examination before the magistrates would still remain, and be legal evidence of the alleged charge.
 

 His Honor winds up his charge, by again succinctly bringing before the jury the issue they had to try. After enumerating the several modes, by which the defendant could shew positively his innocence, he observes, that, if, in any other way, he had shewn
 
 he was not
 
 the father of the child, they ought to find the issue for him; but, if, from the evidence they were satisfied he was the father, or if the evidence produced by him left the question in doubt, they were bound to find the issue against him. We think the charge placed the question fairly and fully before the jury.
 

 Per Curiam, Judgment affirmed.