STATE to the use of CATHARINE STUBBLEFIELD *vs.* · GEORGE WOODRUFF.

Where, in the trial of an issue of Bastardy, the mother of the child was put upon the stand, having the child in her arms, and the Solicitor called the attention of the jury to the child's features, and afterwards in his address to the jury commented upon its appearance, &c., all without objection by the defendant; *Held,* that objection to the Solicitor's course came too late after verdict ; and it was not error for the Judge to charge that the jury might take the appearance of the child into consideration, and give it whatever·weight they thought it entitled to.

It has long been the practice in this State in Bastardy cases to exhibit the child to the jury, and this Court sees no objection to the practice.

[*Outlaw* v. *Hurdle,* 1 Jon. 150, and *State* v. *Jacobs,* 5 Jon. 259, distinguished and approved.]

Issue of ·Bastardy tried before *Clark, J.* at Spring Term, 1871, of NORTHAMPTON Superior Court.

On the trial one Joseph Barham was introduced by the defendant to sustain the character of another witness. He stated he knew the general character of the witness, and it was good. He was then asked, Would you believe the witness on oath ? The Solicitor objected, and his Honor ruled out the question, but permitted the witness to be asked, if from his knowledge of the general character of the witness he would believe him on oath. Defendant excepted.

The mother of the bastard child was examined as a witness. She held the child in her arms and the Solicitor called the attention of the jury to its features. Nothing was then said about any resemblance of the child to ·the defendant, but in his address to the jury the Solicitor called attention to its features and commented upon its appearance, the child being still before the jury.

His Honor, in his charge, told the jury they might take into

consideration the appearance of the child, and give it whatever weight they thought it entitled to.

Verdict and judgment for the State, and appeal by the defendant.

*Attorney General, Battle & Son,* and *Dupre* for the State. *Peebles & Peebles,* for the defendant.

1. The jury had no right, themselves, to compare the looks of the child and the defendant. They should receive evidence as to the resemblance through the sense of hearing (from others) and not of sight. *Outlaw* v. *Hurdle,* 1 Jon. 165. *Otey* v. *Hoyt,* 3 Jon. 407. *State* v. *Jacobs,* 5 Jon. 259.

2. It was the duty of the Judge to correct the statement of counsel. *State* v. *Williams,* 65 N. C. 505, and the cases there cited.

BOYDEN, J. There are two objections made on the record. But the first, as to the testimony of the witness Joseph Barham, has been properly abandoned by the counsel for the defendant.

The remaining question, as to the right of the plaintiff to exhibit the alleged bastard child and to call the attention of the jury to the child's features, was argued with much earnestness, and the right, thus to exhibit the child before the jury, strenuously denied.

The first answer to this is, that no objection on the trial was taken to this course of the Solicitor by the defendant; but apparently, as we take it, he was willing to this course, and that perhaps for the reason, that the defendant and his counsel believed, that this exhibition of the child might tend to satisfy the jury, that the defendant was not the father of the child. But no matter what was his reason for not objecting to this course, at the time, it was certainly too late to do so after the verdict of the jury.

The defendant further objects, that the Solicitor, while addressing the jury, called their attention to the child, which was still before the jury, and commented at length on its appearance, &c.

It is a sufficient answer to this objection that all this was done, for any thing we can see on the record, with the full approbation of the defendant.

The further and last objection is, that his Honor told the jury that they could take into consideration the appearance of the child and give it whatever weight they thought it entitled to.

We see no error in this part of his Honor's charge, but it seems to have been highly proper, so to have instructed the jury, after this evidence had been put before the jury without objection.

This disposes of the case, but as the case of *Outlaw* v. *Hurdle,* 1 Jones 150, and the *State* v. *Jacobs,* 5 Jones 259, have been earnestly pressed upon our attention, as authorities to show error in this case, we deem it proper to distinguish those cases from the present. The case of *Outlaw* v. *Hurdle* was, whether it was competent to prove the hand-writing of the testator, by submitting for inspection to the jury letters written by the testator, for the purpose of enabling them, by comparison, to determine whether the paper writing propounded was in truth the will of the supposed testator. This evidence was properly rejected, for the reason, *first,* that it is a well established principle, that before any witness can testify as to the hand-writing, he must prove that he has had proper opportunities to learn the character of the hand-writing, and in fact, he has become so well acquainted with the character of the writing as to form an opinion of its genuineness. No one is permitted to testify as to hand-writing by merely having seen a few genuine specimens of the hand-writing, because the law holds that competent knowledge of hand-writing, to enable a person to testify, cannot be thus acquired.

But when the question is as to the identity of a party, or his

resemblance to other persons, the law has very properly adopted a very different rule of common sense and common observation, and it allows all persons to testify to such identity or to such resemblance, who have had an opportunity of seeing the persons, it but for an instant. As it does not require an expert to discover such identity or resemblance, the illiterate and inexperienced as well as the intelligent and skillful, even a child of tender years, may testify as to such matters, especially as to the identity of a person. Then why should not the jury be permitted (when they have the opportunity) to see for themselves and draw their own conclusions from their observation, as well as to hear witnesses depose as to their observation made in the same way? It certainly has been the practice to admit such evidence, on the trial of such cases, both in the County and Superior Courts, for more than forty years, without objection, and this Court is not disposed to change a rule of evidence so long and so universally acquiesced in, and founded, as we think, in reason and common observation.

The case of the *State* v. *Jacobs* has been argued as an authority, to show error in this case, as if the Court had ordered the defendant to stand up and exhibit himself before the jury, as was done in Jacob's case. But the record shows no such thing and, therefore, the argument founded on that supposition fails.

There is no error. This will be certified.

PER CURIAM. Judgment affirmed.