## STATE v. ROBERT BRITT.

### Bastardy—Evidence.

1. On the trial of a prosecution for bastardy, evidence that the prosecutrix had criminal intercourse with another man about the time when in the course of nature the child must have been begotten and that such intercourse was habitual, is admissible.

2. On such trial, evidence that the child resembled the man with whom such alleged intercourse was had, is also admissible.

( *State* v. *Patton*, 5 Ire. 180 ; *State* v. *Wilson*, 10 Ire. 131 ; *State* v. *Floyd*, 13 Ire. 382 ; *State* v. *Woodruff*, 67 N. C. 89 ; *Warlick* v. *White*, 76 N. C. 175 ; *State* v. *Bennett*, 75 N. C. 305, cited, distinguished and approved.)

ISSUE of Paternity in a Proceeding in Bastardy tried at Fall Term, 1877, of ROBESON Superior Court, before *Moore, J.*

The case is sufficiently stated by THE CHIEF JUSTICE in delivering the opinion of this Court. Verdict of guilty. Judgment. Appeal by defendant. (See *State* v. *Bowles*, 7 Jones 579.)

*Attorney-General*, for the State.
*Messrs. W. F. French*, and *N. McLean*, for defendant.

SMITH, C. J.   On the trial of the issue as to the paternity of the child, the examination of the mother taken before the Justice, and charging the defendant to be the father, was read in evidence to the jury.

Thereupon the defendant offered himself as a witness in his own behalf, and denied that he had ever had sexual intercourse with the woman.

The mother was then herself examined, and testified that such intercourse had taken place between the defendant and herself, and gave the time and place.

The defendant then proposed to prove in rebuttal of her testimony, and to sustain his own, that she lived on terms of intimacy with another man, that they had been seen together in the woods in the day time, and at night, and on one occasion, about nine months before the birth of the child, occupying the same bed. The evidence on objection was ruled out and defendant excepted.

The defendant further offered to show by the mid-wife that the child bore a resemblance to this man. The Court rejected the testimony and defendant excepted.

The only question before us is as to the admissibility of the evidence.

The first Act on this subject was passed in 1741, and declares that if a woman giving birth to a bastard child "shall on oath accuse any man of being the father of the bastard child, &c., such person so accused *shall be adjudged the reputed father.*"

This Act denied all defence to a charge of bastardy made on the oath of the mother. In the year 1814, the Act was amended, and the examination of the mother declared to be *prima facie evidence* of the fact. Rev. Stat. ch. 12, § 4.

In the construction of the Act thus modified, it was held that to repel the statutory force of the mother's oath, the defendant must show affirmatively that *he is not the father* of the child by proof of non-access, impotence, or other natural defect inconsistent with his paternity. *State* v. *Patton*, 5 Ire. 180; *State* v. *Wilson*, 10 Ire. 131.

This last case was decided at August Term, 1849, and at the next succeeding session of the General Assembly (1850–'51) the law was again amended, and it was enacted that upon the trial of the issue of paternity of the child "the examination of the woman as aforesaid, taken and returned to Court, shall be presumptive evidence against the person accused, subject to be rebutted by other testimony which may be introduced by the defendant." Bat. Rev. ch. 9, § 4.

STATE *v.* BRITT.

At June Term, 1852, this Court was called on to construe the law in its present form, and to decide upon the admissibility of evidence to impeach the veracity of the woman. *State* v. *Floyd*, 13 Ire. 382.

The evidence was declared to be competent, and NASH, J. in delivering the opinion and referring to the recent change, says; "Whatever of incongruity or of verbiage there may be in the Act, there can be no doubt of the meaning of the Legislature. They intended to let in evidence on the part of the defendant of a circumstantial character to show he was not the father of the child. Before that Act, he was required *to prove that he was not*; now he is permitted to satisfy the jury, if he can, by *any evidence* known to law, that the charge is false. The words of the Act are 'subject to be rebutted *by other testimony*'; by what testimony is left at large. The defendant was therefore at liberty to assail the correctness of the evidence, to wit, the examination on the part of the State, by any testimony which had a tendency to show the jury that it was not true, or that they ought not to rely on it."

RUFFIN, C. J., in a separate concurring opinion, after referring to the terms *"prima facie"* and *"presumptive"* evidence, and the Legislative intention in the change, says; "Keeping that circumstance in mind, and having regard to the construction given to the expression "prima facie evidence" in the Act of 1814, and also to the fact that it had been held that the woman when offered as a witness on the trial of an issue might be discredited and impeached, though her examination could only be disproved, it would seem sufficiently clear that as evidence the Act meant to put the examination before the Justice on the same footing with the testimony of the woman in person. Therefore it was competent for the defendant to offer any evidence calculated to impair confidence in the examination."

Concurring in this construction of the statute, we think this case disposes of the question before us.

The defendant swears that he has never had sexual connection with the mother of the child, and to corroborate his own statement, and disprove the charge made against himself, professes to show her criminal intercourse with another man about the time when in the course of nature the child must have been begotten, and that this intercourse had become habitual. The evidence tending to prove this was clearly competent and proper. The Judge also erred in rejecting testimony that the child resembled the same man. It was admissible, as was the other, to show that the defendant was not, and another man was, its father.

In the case of *State* v. *Woodruff*, 67 N. C. 89, the jury was allowed to look at the child and see if it favored the defendant, with a view to ascertain its paternity, and the Court say ; "Where the question is as to the identity of a party, or his resemblance to other persons, the law has very properly adopted a very different rule of common sense and common observation, and *it allows all persons to testify to such identity or to such resemblance*, who have had an opportunity of seeing the persons, if but for an instant."

To the same effect is *Warlick* v. *White*, 76 N. C. 175. 'The only case to which our attention has been called and which seems to conflict with the views we have expressed, is that of *State* v. *Bennett*, 75 N. C. 305. In that case it is held that proof of the woman's illicit intercourse with another man nine months before the birth of the child, does not rebut the presumption of paternity under the statute and was properly rejected. If the case be regarded as an authority, it is clearly distinguishable from ours, in the fact that here is the *defendant's own testimony* that he was not, and in the nature of things could not be the father of the child, and other circumstances are deposed to, tending to sustain his oath in opposition to the oath of the woman.

The evidence offered in *State* v. *Bennett*, was not by itself inconsistent with the imputation of the defendant's pater-

nity, and therefore did not, if true, overcome the presumption. But say the Court; "If the defendant had further proposed to prove that he had had no connection with the woman during the time in which, according to the course of nature the child must have been begotten, the presumption would have been rebutted." This further proof would have rendered the rejected evidence competent, and is present in our case.

We hold that the evidence ought to have been received.

Error.

PER CURIAM.                    *Venire de novo.*