GEORGE W. GAUNT, PLAINTIFF IN ERROR, v. THE STATE, DEFENDANT IN ERROR.

1. The omission to prove that the complaining witness, in an indictment for fornication was a single woman, is not error; the single state being the natural one will be presumed until testimony to the contrary is offered.

2. Upon the trial of an indictment for fornication, where both the bastard and the putative father were viewed by the jury, the jury may consider whether there is a resemblance or not between them. In such cases the proper instrument of proof is inspection by the jury, and not the testimony of witnesses.

In error to Camden Quarter Sessions.

Argued at February Term, 1888, before BEASLEY, CHIEF JUSTICE, and Justices MAGIE and GARRISON.

For the plaintiff in error, *Howard Carrow.*

For the defendant in error, *Richard S. Jenkins.*

The opinion of the court was delivered by

GARRISON, J. This is an indictment for fornication, brought here by writ of error.

In his argument before this court, the counsel for the plaintiff in error relied upon two points. The first of these was the omission of the state to prove that the complaining witness was a single woman. This exception is not tenable. The indictment, it is true, charges that the person with whom the defendant committed fornication was a single woman. The single state is, however, the natural, and, during early life, the only possible one; nor. is there any period at which it is necessarily terminated or merged into marriage. In the absence, therefore, of testimony tending to the contrary, the presumption is that the celibacy which exists during puellescence continues. Therefore, until drawn into actual question, no affirmative testimony on this point was required from the prosecution.

The other point presented was that the trial court refused to charge the jury " that they must find a verdict upon the testimony in the case from the mouths of witnesses, and not from their own view of the resemblance of the child alleged by the complaining witness to be the issue of the alleged fornication," and that as matter of law the jury had no right to consider whether the child looked like the defendant or not.

It was probably the object of counsel to raise by this exception the question whether the resemblance of a child to its alleged parent may be considered by the jury, and, if so, upon what evidence. The record, however, does not present so broad a question; neither upon objection to evidence, nor upon comment of counsel, nor upon exception to the charge of the court, is error assigned in this particular. At the close of the trial the court was requested to charge the jury that they had no right to consider the question of resemblance, although the natural material for such an inquiry had been viewed by them as a necessary incident of the trial. It is upon an exception to the refusal of the court to so charge that error is assigned.

I think it is extremely doubtful whether error can be predicated upon the refusal of a court to charge against intangible impressions, arising naturally from the incidents of a trial, where no foundation, by objection or otherwise, has been laid.

If we give, however, to the exception under consideration, the fullest significance claimed for it, two questions are presented: First, Is the resemblance between the child and the alleged farther a relevant matter? and, second, If relevant, should it be determined by inspection, or by the testimony of witnesses?

In considering the first of these questions, viz., as to the relevancy of resemblance as an element of proof, it is clear that testimony of this character must be treated as a class. Thus viewed, whatever opinion may be held as to the illusory nature of such evidence in cases like the present, there is no question that as a class, resemblances are admitted wherever relevant. In cases involving handwriting, for instance, it has always been deemed pertinent to have a comparison of hands. Likewise, in sales by sample, in patent cases, in trade-mark and infringement suits, resemblance is of the essence of the proof. Nor can it be said that the tendency of recent applications of this rule has been toward restriction—rather the reverse.

In the courts of a sister state—New York—operas have been performed in court and comic songs sung; plagiarized papers have been read, and the so-called materialization of spirits exhibited, all within the scope of the doctrine of the relevancy of resemblance, while in a case now pending in the courts of Pennsylvania, a board of experts have been ordered to inspect a certain contrivance called the Keeley Motor, with a view to the determination of its resemblance or mechanical equivalency to a motor described in plaintiff's partnership bill. Examples of the application of the same rule to family likeness are not wanting. In the notorious Douglass case (House of Lords, 1769), Lord Mansfield allowed the resemblance of the appellant and his brother to Sir John Stewart and Lady Jane Douglass to be shown, as

well as their dissimilarity to those persons whose children they were supposed to be. While as late as 1871 Lord Chief Justice Cockburn, in the Tichborne case, held that the resemblance of the claimant to a family daguerreotype of Roger Tichborne was relevant, and intimated that comparison of features between the claimant and the sisters of Arthur Orton would be permitted.

The extension of this rule to cases of family likeness in bastardy and other suits of alleged parentage, cannot be questioned seriously* on principle, the illusory nature of such resemblances rather imposing a duty on the court in conjunction with the admission of the proof, than militating against the relevancy of the inquiry.

Such has been the view taken by the courts in this country.

In *Garvin* v. *State*, 52 *Miss.* 207, an indictment, rested on the ground that the defendant was a colored man. Of this there was no proof, but, as the defendant had been before the jury, the court held that their inspection did away with the necessity of proof, saying, "juries may use their eyes as well as their ears."

In *Jones* v. *Jones*, 45 *Md.* 148, 151, the court permitted the jury to judge as to a personal resemblance, but not to hear testimony on that subject, upon the ground that when the parties are before the jury whatever resemblance there is will be directly apparent; but to permit third persons to give their opinions would be raising a class of experts where expertism does not exist.

In Iowa the courts have held, on the question of resemblance of a bastard to its alleged father, that an infant two years old might be exhibited to the jury. *State* v. *Smith*, 54 *Iowa* 104 ; while a babe of three months could not be shown. *State* v. *Danforth*, 48 *Iowa* 43. This discrimination rests upon a physiological notion adopted by the court, which can scarcely find justification as a rule of evidence.

In *Risk* v. *State*, 19 *Ind.* 152, a child of three months was put in evidence. The court held that as there had been no objection to the evidence the jury had a right to consider it.

In North Carolina, in the case of *State* v. *Woodruff*, 67 *N. C.* 89, the charge of the court that the resemblance of a bastard to the defendant was relevant, was held good. In the case of *Warlick* v. *White*, 76 *N. C.* 175, the question was whether a girl was of mixed blood. Plaintiff had subpœnaed the girl for the sole purpose of having her seen by the jury. Upon objection being made the court overruled the offer. Held, on appeal, that the court erred—that on a question of mixed blood the offer to exhibit the girl should have been permitted.

In the cases in New York which prohibited testimony upon resemblances, the question of view by the jury does not arise; but in *Petrie* v. *Howe*, 4 *T. & C.* 85, the court, in rejecting testimony, says: "If this species of physiological evidence is admissible, it should not be covertly introduced." In that case, which was for *crim. con.*, the court had received testimony as to the color of the hair of plaintiff's *other* children, the illegitimate child having hair of a different color.

In *Gilmanton* v. *Ham*, 38 *N. H.* 108, counsel commented upon the resemblance of the child to the defendant, and, upon appeal, the court affirmed his right so to do, upon the ground that the matter was relevant and the parties before the jury.

*Finnegan* v. *Dugan*, 14 *Allen* 197. In this case the child was in court, and the judge, against defendant's objection, charged the jury that they might consider whether there was any resemblance between the child and the defendant. In affirming the judgment, the Supreme Court says: "It is a well-known physiological fact that peculiarities of feature and personal traits are often transmitted from parent to child. Taken by itself, proof of such resemblance would be insufficient to establish paternity; but it would be clearly a circumstance to be considered in connection with other facts tending to prove the issue on which the jury are to pass."

The same court, in *Eddy* v. *Gray*, sustained a ruling rejecting testimony upon the same subject, upon the ground that it did not come within the rule of expert testimony.

The further question then arises whether the court below

erred in refusing to charge the jury that they must judge of this matter of resemblance, not from their own view, but from the testimony delivered in the case from the mouths of witnesses.

Upon this point the position of the plaintiff in error lacks the support of the weight of authority. Of the cases cited in his brief as against the admission of testimony as to resemblance, many proceed solely upon the ground that the opinions of witnesses cannot be received for this purpose while not intimating that the question of resemblance is impertinent.

There seems to be no good reason why a jury, if the question of resemblance is to be considered by them, should be compelled to base their decision upon a second-hand view. The effect of the substitution of testimony for inspection is to put the subject-matter of investigation one further remove from its responsible judges, and thus to add to the infirmities inherent in proof of this class the additional danger of bias and imposition.

Inspection is like admission in that, while not testimony, it is an instrument for dispensing with testimony, and in a doubtful case the class of testimony it dispenses with might be a controlling circumstance. Thus regarded, and in view of the almost utter worthlessness of the testimony of witnesses adduced in the question of the resemblance of a bastard to an alleged parent, it is obvious that inspection is on this account also to be preferred.

In the case under consideration the child was in court during the trial, the attention of the jury was directed to it as the offspring of the alleged fornication, the defendant was a witness in the cause; under these circumstances it was not error for the court to refuse to charge the jury that they must not consider the question of resemblance at all, and that if they did consider it, it must be from the testimony from the mouths of witnesses, and not from their own view.

Finding no error in the record, the judgment of the court below should be affirmed.