[Crim. No. 1683.  In Bank.—December 13, 1911.]

## THE PEOPLE, Respondent, v. F. C. RICHARDSON, Appellant.

CRIMINAL LAW—FURNISHING PREGNANT WOMAN WITH MEDICINE TO PRODUCE MISCARRIAGE—EVIDENCE—CORROBORATION.—In a prosecution, under section 274 of the Penal Code, for supplying a pregnant woman with a certain medicine, with intent thereby to procure her miscarriage, the evidence is held sufficient, with respect to every element of the offense, to corroborate the testimony of the woman, and to justify a conviction, within the requirements of section 1108 of the Penal Code.

ID.—ABSOLUTE KNOWLEDGE OF PREGNANCY UNNECESSARY—INTENT TO PRODUCE MISCARRIAGE IN EVENT OF PREGNANCY.—It was not essential to the commission of such offense, that the defendant, at the time he supplied the medicine, should have known absolutely that the woman was pregnant. If he had only a suspicion that pregnancy existed, and furnished the medicine with the intention to thereby procure the woman's miscarriage if such pregnancy existed, a sufficient intent is shown to meet the requirement of the statute defining the offense. In the present case the evidence is held sufficient to show the existence of such intent, and the testimony of the woman in that respect is sufficiently corroborated.

ID.—EVIDENCE OF PREGNANCY AT TIME DRUG WAS FURNISHED—POSSIBILITY OF SUBSEQUENT PREGNANCY.—Where the evidence was sufficient to warrant the jury in concluding, beyond a reasonable doubt, that the woman was pregnant at the time the medicine was furnished, a mere possibility that she did not become pregnant until afterwards, will not warrant the setting aside of a verdict of conviction.

ID.—MARRIAGE OF WOMAN AFTER BECOMING PREGNANT—CHILD BORN DURING WEDLOCK—EVIDENCE OF MOTHER ADMISSIBLE TO ESTABLISH PREGNANCY.—In such a prosecution, the fact that a child was born of the woman after her marriage to another man and while such marriage existed, does not preclude the testimony of the woman to show that she was pregnant with such child prior to her marriage, and at the time the medicine to produce the miscarriage was prescribed by the defendant.

ID.—EVIDENCE OF DEFENDANT'S PATERNITY OF CHILD—TESTIMONY OF MOTHER THAT DEFENDANT WAS FATHER.—Evidence of the defendant's paternity was admissible in such case, on the question of motive, and as tending to show inducement for the crime. And where the woman, without objection, has testified that during the time when in the course of nature the child must have been conceived, she never had sexual intercourse with any other man than the defendant, it was without prejudice to permit her to testify, in answer to a direct question as to its paternity, that the defendant was the father.

ID.—EXHIBITION OF CHILD TO JURY—COMPARISON OF APPEARANCE OF CHILD WITH THAT OF DEFENDANT—EVIDENCE IN CORROBORATION OF TESTIMONY AS TO TIME OF CONCEPTION.—In such a prosecution, it was proper to permit the woman to bring the child, then about five and a half months old, with her upon the witness stand, and to state that it was the child to which she referred in her testimony, thus giving the jury an opportunity to see it and compare its appearance with that of the defendant in determining the question of its paternity. Such exhibition of the child was not objectionable for irrelevancy or incompetency, and in the present case was proper as corroborative of the testimony that it was born fully matured and perfect, a matter material in determining whether it was conceived prior to the time that defendant furnished the medicine to the woman.

ID.—STATEMENT OF DEFENDANT AS TO SEXUAL INTERCOURSE WITH OTHER WOMAN—FURNISHING OTHER WOMAN WITH SIMILAR DRUG TO PRODUCE MISCARRIAGE.—Testimony of the woman was admissible to the effect that the defendant told her shortly after he had given her the medicine, that he had sexual relations with another girl, if given in connection with other testimony to the effect that he told her, as a part of the same statement, that such other girl was pregnant and was taking the same medicine, and that he had given it to her for the same purpose, viz.: "to start the flow." Such evidence was proper as tending to show an admission on his part as to knowledge of the character of the medicine and its tendency to produce a miscarriage, and also the motive and intent with which he had furnished it to her.

ID.—CORPUS DELICTI—EVIDENCE OF WOMAN CORROBORATED BY EVIDENCE OF CONFESSION.—The evidence of the woman was sufficient proof of

the *corpus delicti* to warrant the introduction of evidence of admissions or confessions on the part of the defendant for purposes of the corroboration made necessary to sustain a conviction by section 1108 of the Penal Code.

ID.—CHILD BORN FULLY DEVELOPED—INSTRUCTION—PRESUMPTION THAT THINGS HAVE HAPPENED ACCORDING TO NATURE.—In such a prosecution, where one of the questions involved was whether the child born of the woman in a fully developed and perfect condition, was born at the end of the natural term of gestation, it was proper for the court to instruct the jury, in accord with subdivision 28 of section 1963 of the Code of Civil Procedure, that it is presumed that things have happened according to the ordinary course of nature and the ordinary habits of life.

ID.—INSTRUCTIONS AS TO INTENT TO PROCURE MISCARRIAGE—PRESUMPTION OF INTENT—NATURAL CONSEQUENCES OF ACTS.—Where the jury was repeatedly instructed that the specific intent with which the drug was furnished was the gist of the offense, and that unless they were satisfied beyond a reasonable doubt by the evidence that it was furnished with the intent to procure a miscarriage in the event that the woman was pregnant, they must acquit, an isolated instruction, to the effect that a person must "be presumed to intend all the natural, probable, and usual consequences of his own acts, unless there is evidence direct or indirect to controvert this presumption, will not be construed as authorizing them to find as a fact an intent to procure a miscarriage from the mere fact of the furnishing of the drug.

APPEAL from a judgment of the Superior Court of Sonoma County and from an order refusing a new trial. J. Q. White, Judge presiding.

The facts are stated in the opinion of the court.

W. F. Cowan, and T. J. Butts, for Appellant.

U. S. Webb, Attorney-General, and J. Charles Jones, Deputy Attorney-General, for Respondent.

ANGELLOTTI, J.—The defendant was convicted of the offense defined by section 274 of the Penal Code as follows: "Every person who provides, supplies, or administers to any pregnant woman, or procures any such woman to take any medicine, drug, or substance, or uses or employs any instrument or other means whatever, with intent thereby to procure the miscarriage of such woman, unless the same is necessary

to preserve her life, is punishable," etc. The indictment charged that he on or about May 10, 1909, did willfully, unlawfully and feloniously provide and supply to a woman, naming her, who was then and there a pregnant woman, and procure her to take, a medicine, drug or substance, to wit: certain pills (describing them), with intent thereby to procure her miscarriage, said miscarriage not being at all necessary to preserve her life. He appeals from the judgment pronounced upon such conviction and from an order denying his motion for a new trial.

1. It is claimed that the evidence was insufficient to warrant a conviction. There is no good foundation for this claim. It is true that our law provides that "upon a trial for procuring or attempting to procure an abortion, or aiding or assisting therein, . . . the defendant cannot be convicted upon the testimony of the woman upon or with whom the offense was committed, unless she is corroborated by other evidence" (Pen. Code, sec. 1108), but there was ample corroboration of the woman in this case as to all matters essential. It was necessary for the prosecution to show, as contended by learned counsel for defendant, (a) that defendant furnished the medicine, drug, or substance to the woman, (b) that he furnished it with the intent then and there to thereby procure her miscarriage, and (c) that the woman was then and there a pregnant woman. A brief statement of some of the testimony will show substantial evidence warranting the conclusion of the jury, notwithstanding the rule requiring corroboration of the testimony of the woman.

The defendant kept a business college in the city of Santa Rosa, having therein about thirty-five pupils. The woman in question entered such school as a pupil in the year 1907, being then a girl between sixteen and seventeen years of age. She continued to be a pupil therein, with occasional periods of absence, until May or June, 1909. In 1908 defendant, who was a married man, living with his wife and children, began paying her attentions with a view to having sexual intercourse with her. In August, 1908, he commenced having sexual intercourse with her, and the sexual relations thus commenced were continued constantly until she left his school in May or June, 1909. The woman's testimony in this respect was fully corroborated by the admissions contained in the

defendant's statement to the district attorney, made prior to his arrest. The woman testified that in March, 1909, she missed her usual monthly sickness and told the defendant, and also told him that she was in the "family way," and that he said that it could not be so. She also missed her sickness the following month and again told defendant and he said he would get her some pills. He did subsequently furnish her with some pills and told her to take them. He subsequently asked her if they started the flow, and on being informed that they did not, said he would get her some other pills. He then gave her a box of these pills, telling her that they were for suppressed menses. This was in May, 1909. She took some of these, with the result that a slight flow occurred. Her menses did not return until after the birth of her child in December, 1909. Somewhere about April 1, 1909, she began to suffer from what the doctors call "morning sickness," a complaint, according to the doctors, that almost always indicates pregnancy, and this continued up to a month or so before the child was born. As to the existence of this "morning sickness" as early as April, 1909, the woman was corroborated by the testimony of two other witnesses. On July 2, 1909, she became acquainted with her present husband, and married him on August 19, 1909. On December 19th or 20th, 1909, she gave birth to a child, which was at the time of its birth fully developed and which weighed seven or eight pounds. There was absolutely nothing about the child to indicate that it was prematurely born. This child lived and was at the time of the trial five months old. In his statement to the district attorney, defendant admitted that he furnished the woman with the pills. He said he bought a box of them at a drug store in Santa Rosa and gave them to her. He further said the reason he did this was because the woman had told him her menses had stopped, and she asked for them. His statement further showed that he knew that the tendency of these pills was to produce a resumption of the menstrual flow, whenever it was interrupted for any reason, and that prior thereto he had procured the same kind of pills for use in such cases. The pills appear to have been put up by the manufacturer and sold by the retailer in boxes, containing a booklet containing statements indicating their value in the case of suppressed menses. A chemical analysis of a box of such pills

showed that each five-grain pill contained about 2.88 grains of certain kinds of organic matter. The medical testimony was to the effect that pills composed to such an extent of such organic matter, if taken in sufficient quantity, would produce an abortion in seventy-five or eighty per cent of the cases. There was also testimony to the effect, that, as said by the district court of appeal in this case: "By the administering of certain drastic drugs, such as were given to the prosecutrix, to a pregnant female, a slight return of menstruation may be superinduced, and still a state of pregnancy remain; that, in other words, while the process of gestation may thus appear to be arrested, it, nevertheless, still goes on, if an abortion has not been accomplished or a sufficient quantity of the specific intended to bring about that result has not been administered to cause a miscarriage." The woman further testified that defendant had proposed taking her to San Francisco to have an operation performed. Defendant admitted having talked with her about going to San Francisco with her, but claimed that the proposition was made by her, and that he refused. The woman was corroborated, however, by statements of defendant made to Mr. Wiatt. Mr. Wiatt's testimony was substantially that about the last of May or first of June, 1909, defendant told him that the woman wanted him to take her to San Francisco to get her work, that he did not want her to go, but that "they might," and that "he did not want us to be uneasy if they did go." She further testified that shortly after giving her the pills, he acknowledged to her substantially that he had given them to her for the purpose of procuring her miscarriage, if she was in fact pregnant, and that he knew of the use of such pills in other cases for the same purpose.

The foregoing statement shows very clearly that there was sufficient evidence to justify the jury in finding every fact essential to the guilt of the defendant of the offense charged.

It is not and could not reasonably be claimed that the furnishing by him to the woman of the pills described in the indictment is not amply shown.

It appears equally clear that the evidence warranted the jury in concluding that they were so furnished by defendant with the intent then and there and thereby to procure the miscarriage of the woman, if she was in fact pregnant, as he

had every reason to believe she might be. Of course, he could not then know absolutely whether or not she was pregnant, but such knowledge on his part was not essential to the commission of the offense. It was said by the supreme court of New Jersey, speaking in the light of a substantially similar statute to ours: "The language of the act is express in declaring that an intent to cause a miscarriage is an essential ingredient of the crime. There are no express words declaring that knowledge of the woman's condition is an essential ingredient of the crime. . . . But an intent to produce a miscarriage may exist without absolute knowledge of pregnancy. For example, if there exists in the mind a fully formed belief that pregnancy exists, there may evidently exist as fully formed an intent to cause a miscarriage. And if there be a mere suspicion that pregnancy exists, there may be an intent to cause a miscarriage if the suspected condition is in existence. . . . The plain and obvious meaning of the act was not to require such proof (proof of absolute knowledge of pregnancy), and the construction given it in this case conforms to the manifest intent of the legislature." (*Powe* v. *State,* 48 N. J. L. 34, [2 Atl. 662].) If defendant had only a suspicion that pregnancy existed, and furnished the pills with the intention to thereby procure the woman's miscarriage *if such pregnancy existed,* we have the intent required by the law which defines this offense. As to the existence of such an intent on his part, we do not see how any other conclusion than that reached by the jury could be reached in the light of the evidence. We have, in the first place, the statement made by defendant to the woman as to the purpose for which he had given them to her. Ample corroboration of the evidence of the woman as to the purpose so admitted is to be found in the facts and circumstances of the case. We do not understand it to be claimed that proof of such intent could be shown only by statements of the defendant. If such were the law it would be practically impossible to produce any evidence of guilty intent in the great bulk of cases, for it is rare indeed that a person proposing to commit a crime makes any statement of his intention that is suspectible of proof. We have in this state the common sense rule that "the intent or intention is manifested by the circumstances connected with the offense, and the sound mind and discretion of the·accused." (Pen.

Code, sec. 21.)    If the circumstances connected with the offense are of such a nature as to disclose the intent, it is enough.    We are at a loss to understand how, in view of the illicit relations shown to have existed between defendant and the woman, the strong motive on the part of defendant for concealing the fact of such illicit relations, the possibility, if not the probability, of a disclosure in the event of the birth of a child to the woman, the knowledge by him of symptoms in the woman that might reasonably cause suspicion that she was with child by him, and his consequent purchase of and furnishing to her to be taken by her certain pills which would in seventy-five or eighty per cent of the cases produce a miscarriage, and with the character and effect of which he had knowledge, a jury could have well concluded otherwise than that defendant suspected pregnancy on the part of the woman and furnished the pills to her with the intent then and there thereby to produce her miscarriage, if in fact she was pregnant.

Upon the question whether she was then a pregnant woman, there is, of course, a possibility that the conclusion of the jury was erroneous.    It is possible that the conception was the result of intercourse between the woman and defendant occurring after the pills were furnished, some time in May or the early part of June.    But a mere possibility that this may be so does not preclude a conclusion to the contrary.    It is enough if the evidence was of such a nature as to warrant the jury in concluding that there was no reasonable doubt that the woman was pregnant at that time.    The jury was warranted by the evidence in concluding that her menses ceased in March and did not reappear until after the birth of the child nine months later, and that she suffered from a complaint existing in seventy-five to eighty per cent of cases of pregnant women, from the early part of April until shortly before the birth of her child.    She gave birth to a fully developed and perfect child in December, 1909, at the end of what would be the natural and ordinary period of pregnancy if conception occurred in March, 1909.    We are satisfied that it must be held that these facts were sufficient to warrant the jury in concluding that the woman was pregnant at the time defendant furnished her with the pills.    There is no pretense that a miscarriage was necessary to preserve the life of the woman.    We

conclude, therefore, that the verdict was fully warranted by the evidence.

It appears to be claimed that no evidence given by the woman tending to show pregnancy commencing in March or April, 1909, and terminating in December, 1909, although received without objection, can be considered, in view of the fact that the child was born after her marriage to another and in lawful wedlock, the theory being that evidence of the husband or wife tending to show the illegitimacy of a child so born is incompetent. Passing all other possible answers to this claim, it does not seem to us that the rule invoked can properly have any application to a case of this character. The question of the legitimacy or illegitimacy of the child is in no way directly involved in this case, and, of course, the legal rights of the child can be in no way affected by any conclusion that may be reached herein. It is not even essential to the offense here charged, as it is in bastardy proceedings, that defendant is the father of the child. The object of such testimony was simply to show that the woman was pregnant at a time prior to her marriage when the defendant furnished her with a substance designed to procure her miscarriage if she was in that condition, and it was material and necessary testimony upon that point. That it may incidentally tend to show that the child was not begotten by the man who subsequently met and married the mother, the legal rights of such child being in no way affected thereby, should not require its exclusion, and we do not think that the authorities require any such conclusion. In *Ratcliff* v. *Wales,* 1 Hill (N. Y.) 65, approvingly cited and following in *Chamberlain* v. *People,* 23 N. Y. 85, [80 Am. Dec. 255], it was said that it has been uniformly held in bastardy cases where the mother is a married woman, that "from the necessity of the thing, she has been constantly permitted to prove the criminal intercourse by which the child was begotten." None of the testimony given by the woman in this case came within the inhibition as the same is declared in *Estate of Mills,* 137 Cal. 298, [92 Am. St. Rep. 175, 70 Pac. 91], viz.: that neither husband nor wife may "testify to the fact of non-access during co-habitation." The rule was further stated in the case just cited as follows: "Illegitimacy may be proved; but it cannot be proved by the evidence of a husband or wife that while living together they did not have

sexual intercourse." (See, also, *Baker* v. *Baker,* 13 Cal. 99.) It should further be noted that most of the testimony of the woman in this regard was given without objection, and that the particular objection here made does not appear to have been suggested at all in the trial court.

2. Many errors are alleged in the rulings of the trial court on questions of evidence. We shall mention such objections in this regard as appear to warrant notice.

The woman, having testified that her child was born on December 19, 1909, was asked: "Who is the father of that child?" An objection interposed to this question merely on the ground that the same called for the conclusion of the witness was overruled, and the witness answered that defendant was the father. We do not deem it necessary to consider whether this ruling was technically erroneous. She testified, without objection, that never from the time she first entered defendant's school until she left it on June 20th did she have sexual intercourse with any other man than the defendant, and also that she first became acquainted with her husband on July 2, 1909. Under these circumstances, her answer that defendant was the father of the fully developed, fully matured, and perfect child born December 19, 1909, obviously could not have been prejudicial. Evidence of paternity was admissible, of course, in this case on the question of motive and as tending to show inducement for the crime.

The trial court, over the objection of defendant, permitted the woman to bring the child with her upon the witness stand and state that it was the child to which she referred in her testimony, thus giving the jury an opportunity to see it and compare its appearance with that of the defendant in determining the question of its paternity. The child was then about five and a half months old. There appears to be some conflict in the authorities on the question whether an alleged child may thus be exhibited to a jury for the purposes of such comparison. The propriety of this practice appears to have been recognized in *Estate of Jessup,* 81 Cal. 418, [6 L. R. A. 594, 21 Pac. 976, 22 Pac. 742], though some doubt was there expressed whether such a comparison would go far toward establishing relationship. As is said in section 166 of Wigmore on Evidence, the propriety of an inference of relationship from similarity of corporal traits rests in the supposed

physiological likelihood that traits may be transmitted by pro-
creation, a physiological principle that is a matter of common
knowledge. An examination of the authorities leads us to
the conclusion that the better rule is that the objection in such
cases goes only to the question of the weight to be accorded
testimony of this nature, and not to its relevancy or com-
petency. . This was the conclusion of the supreme court of
New Jersey in *Gaunt* v. *State,* 50 N. J. L. 490, [14 Atl. 600],
a prosecution for fornication. This would appear to be true
regardless of the age of the child. (See *State* v. *Woodruff,*
67 N. C. 89; *State* v. *Britt,* 78 N. C. 439; *Crow* v. *Jordan,* 49
Ohio St. 655, [32 N. E. 750]; *State* v. *Saidell,* 70 N. H. 174,
[85 Am. St. Rep. 627, 46 Atl. 1083]; *Gilmartin* v. *Ham,* 38
N. H. 108; *Finnegan* v. *Dugan,* 14 Allen (Mass.), 197; *Kelly*
v. *State,* 133 Ala. 195, [91 Am. St. Rep. 25, 32 So. 56].)
While, as said before, there is a conflict in the authorities
on this proposition, we are of the opinion that there was no
good objection to the course pursued in this case. Regardless,
however, of what we have said on this point, we think it can-
not be disputed that the exhibition of the child was proper
as corroborative of the testimony that it was born fully ma-
tured and perfect, a matter material in determining whether
it was conceived prior to the time that defendant furnished
the pills to the woman.

In view of the fact that the woman had testified without
objection that defendant, in soliciting her consent to inter-
course, told her that he had done the same thing to other
girls in the school and mentioned their names, her subsequent
testimony that she knew such girls attended the school, which
was objected to, could not have prejudiced him.

Subsequent testimony given by her under objection to the
effect that he told her shortly after he had given her the pills,
that he had sexual relations with another girl, was admissible.
This testimony was given in connection with other testimony
to the effect that he told her, as a part of the same statement,
that such other girl was pregnant and taking the same pills
that she was, and that he had given them to her for the same
purpose, viz.: "to start the flow." It was proper evidence as
tending to show an admission on his part as to knowledge
of the character of the pills and their tendency to produce a
miscarriage, and also the motive and intent with which he had

furnished them to her. If evidence is material and competent, the fact that it may reflect discreditably upon a defendant is no ground for its exclusion.

There was no error in receiving in evidence the statement made by the defendant to the district attorney in his office prior to his arrest. It is not claimed that this statement was not freely and voluntarily made by the defendant, without inducement or pressure of any kind on the part of the district attorney or any other officer. The point against it appears to be that it was not admissible in evidence "until after the *corpus delicti* in the case had been proven," and that the testimony previously given by the woman was not sufficient to prove such *corpus delicti,* in view of the law requiring corroboration of her testimony before a conviction could be had. There is nothing in the point. The law in regard to corroboration (Pen. Code, sec. 1108) is simply that the defendant "cannot be convicted upon the testimony" of the woman, unless she is corroborated by other evidence. Her evidence was sufficient proof of the *corpus delicti* to warrant the introduction of evidence of admissions or confessions on the part of defendant for purposes of the necessary corroboration. That the testimony of the woman may thus be sufficiently corroborated by a confession of the defendant to warrant a conviction, is shown by what is said in *People* v. *Josselyn,* 39 Cal. 400.

We think that a sufficient foundation was laid to warrant the evidence based on a chemical analysis of a box of the same kind of pills which was purchased by the officers at a drug store in Santa Rosa.

The other assignments of error in the matter of rulings on evidence do not require notice here, other than the mere statement that there is nothing therein requiring a reversal.

Certain errors in the matter of instructions to the jury are alleged.

The court instructed the jury as follows: "Under the law of this state, there is a presumption that things have happened according to the ordinary course of nature and the ordinary habits of life. Such presumption may be controverted or disproved by other evidence." This was in accord with subdivision 28 of section 1963 of the Code of Civil Procedure. It is not disputed that this is correct as an abstract proposition of law, but the point against it appears to be that

with reference to the facts of this case it makes a presumption "run backwards." We see no ground for such a claim. The authorities cited to the effect that the presumption that a thing once proved to exist continues as long as is usual with things of that nature, does not operate retrospectively, and that there is no presumption that a fact or state of things shown to exist at a particular time was in existence prior thereto, relate to an entirely different subject-matter and have no application here. In view of the established physio- logical fact, testified to by the medical witnesses in this case, that 280 days constitute the average normal period of gesta- tion in the case of human beings, the rule of law stated was applicable. One of the questions in this case was whether the birth of this fully developed and perfect child had come about in the ordinary course of nature, that is, at the end of the natural term of gestation.

The instruction advising the jury substantially that even if defendant did not know whether pregnancy on the part of the woman was the reason for the cessation of her menses when he furnished her the drug, if he did furnish it, yet if he fur- nished it with the intention that in case she was pregnant her miscarriage should be thereby procured, and she was in fact then pregnant, he was guilty of the offense charged, was, as we have heretofore seen, correct. (See *Powe* v. *State,* 48 N. J. L. 34, [2 Atl. 662].)

The court instructed the jury as follows: "A person must be presumed and is presumed to intend to do that which he vol- untarily and willfully does in fact do, and must also be pre- sumed to intend all the natural, probable and usual conse- quences of his own acts, unless there is evidence direct or in- direct to controvert this presumption." It is not disputed that this is a correct exposition of the law in ordinary cases, but it is urged that the latter part of the instruction is not applic- able and is misleading where, as in this case, the intent with which an act is done is the gist of the offense. We quite agree with counsel, that an intent to procure a miscarriage by the pills is not to be legally presumed from the fact of the furnish- ing thereof, even though the circumstances of such furnishing may be sufficient to warrant an inference as a fact of such intent, and that there was no *legal presumption* arising from the mere furnishing to the effect that defendant intended to

thereby procure a miscarriage. This particular intent being, as said, the gist of the offense, it was incumbent on the people to establish it as a *fact* by such evidence as would warrant a conclusion to that effect on the part of the jury. (*People* v. *Jones,* 160 Cal. 358, [117 Pac. 176].) But we do not think that the instruction complained of was meant or could have been understood by the jury as requiring or authorizing them to find any such intent in the absence of evidence establishing it to their satisfaction beyond all reasonable doubt. This is clear when we examine the charge as a whole. The jury was repeatedly and emphatically instructed that the specific intent with which the drug was furnished was the gist of the offense, and that unless they were satisfied beyond a reasonable doubt by the evidence that it was furnished with the intent to procure a miscarriage in the event that the woman was pregnant, they must acquit. For instance, one instruction, after stating that guilt could attach only in the event that it appeared from the evidence beyond all reasonable doubt, that such medicine was provided "with intent to produce a miscarriage," proceeded as follows: "Therefore, even though you believe from the evidence that defendant supplied said medicine to said . . ., still, if you cannot determine from the evidence beyond all reasonable doubt whether such medicine was provided to procure miscarriage, or to relieve suppressed menstruation, you must find defendant not guilty." This is but an example of several instructions given by the court on the element of the intent, and the clear purport of the whole charge was that, to entitle the prosecution to a verdict, it was incumbent upon it to prove as a fact, to the satisfaction of the jury beyond all reasonable doubt, not only the furnishing of the pills, but also a specific intent on the part of the defendant to produce a miscarriage thereby, if pregnancy existed. It is inconceivable that the jury understood otherwise.

We see nothing in any of the points made as to other instructions and requested instructions that requires notice, further than to say that there was no error on the part of the trial court in regard thereto.

The judgment and order denying a new trial are affirmed.

Shaw, J., Lorigan, J., Henshaw, J., and Melvin, J., concurred.