[Crim. No. 1022. First Appellate District, Division One.—April 3, 1922.]

THE PEOPLE, Respondent, v. MARY VUYACICH, Appellant.

[1] CRIMINAL LAW — TESTIMONY OF PEACE OFFICER — WEIGHT AND CREDIBILITY — INSTRUCTIONS. — In a criminal prosecution, a requested instruction to the effect that in weighing the testimony

---

1. Right of jurors to act on their own knowledge as to credibility of witnesses, note, 31 L. R. A. 496.

of peace officers care should be used because of the natural and unavoidable tendency of such persons to procure and state evidence against the accused is properly refused.

[2] ID.—CONFESSION—SUFFICIENCY TO WARRANT CONVICTION—INSTRUCTIONS.—In a criminal prosecution, it is not error to refuse to instruct the jury that if they believe from the evidence that the defendant made a confession, such confession should be received with great caution, and unless supported by other proof in the case tending to convict her of the commission of the crime it is insufficient to convict. After proof of the *corpus delicti* the confession of a defendant is sufficient to warrant a conviction.

[3] ID.—MURDER—REMOTE EVIDENCE.—In a prosecution of a wife for the murder of her husband, it is not error to sustain the prosecution's objections to questions relating to the birth of one of defendant's children and what her husband did to it on a date over seven months prior to the homicide.

APPEAL from a judgment of the Superior Court of Santa Clara County. J. R. Welch, Judge. Affirmed.

The facts are stated in the opinion of the court.

W. R. Biaggi for Appellant.

U. S. Webb, Attorney-General, and John H. Riordan, Deputy Attorney-General, for Respondent.

TYLER, P. J.—Defendant was charged by information with the crime of murder and convicted of manslaughter.

Little need be said of the evidence, as it is not claimed that it is insufficient to sustain a conviction. Briefly stated, it is as follows:

The accused was the wife of one Steve Vuyacich, who was murdered on or about the ninth day of May, 1921. She had been carrying on illicit relations with one Nick Jaramoaz and they had planned to elope, for the reason given by her that her husband was cruel and had choked one of their children to death. Early in the morning of the day following the commission of the crime here charged, defendant called on her neighbors and informed them that her husband had been murdered by robbers. Shortly thereafter her paramour was arrested and accused of having

2. Confession in aid of other evidence to establish *corpus delicti* in homicide, note, 68 L. R. A. 73.

committed the deed. There is evidence to show that prior to the arrest of defendant for participation in the crime she talked over the matter of the killing of her husband with a woman acquaintance, and related to her the manner in which he had been killed. In this conversation she stated that she and her paramour had killed him and had for a long time intended to do so, that they wanted him to insure his life for fifteen or twenty thousand dollars, so that they might be able to go back to the old country. The same story, in substance, was related to the witness at a subsequent period. Thereafter defendant was accused by another acquaintance of having lied to the authorities concerning the manner in which her husband met his death, and was informed by such acquaintance that her paramour had confessed. Defendant then directed this witness to the place where the clothes of the murderer had been buried: She was thereupon arrested. Shortly thereafter she made a confession to the authorities in which she related the details of the murder. She admitted that Jaramoaz and herself had discussed the killing of her husband, and of their intention to return to the old country. She further admitted that according to a prearranged plan Jaramoaz, on the night of the murder, pretended to be a burglar and that he entered the house, threatened her and demanded that she tie her husband's hands and blindfold him. This she did, and then, as directed, led her husband out of the house, told him to sit down and not be frightened, that she was with him. Deceased followed her directions, whereupon Jaramoaz struck him on the head with a hammer and then stabbed him to death. Defendant at the trial denied making the confession, and testified that on the night of the murder she and Jaramoaz had decided to elope, and that according to the plans as she understood them, her husband was not to have been murdered but simply tied to a tree so that they could get away, but that after he was taken from the house by Jaramoaz she heard him call for help and that she then ran to the door and saw Jaramoaz "working fast with a knife"; that thereafter Jaramoaz took off his clothes and they buried them.

As before stated, no question is here raised as to the insufficiency of the evidence, but it is claimed that the judgment of conviction should be reversed for the reason

that the trial court refused to give certain instructions, and for the further reason that it committed error in refusing to admit certain evidence during the progress of the trial. [1] Defendant asked for and was refused an instruction to the effect that in weighing the testimony of peace officers care should be used because of the natural and unavoidable tendency of such persons to procure and state evidence against an accused.

The instruction was properly refused. While in some jurisdictions the rule is to the effect that testimony of peace officers should be received with caution, it has never obtained here. Our courts have consistently held that instructions which single out the testimony of particular witnesses for comment, and instructions bearing on the weight to be attached thereto, should not be given. (*People* v. *Keith,* 141 Cal. 686, 690 [75 Pac. 304]; *People* v. *Converse,* 28 Cal. App. 687, 689 [153 Pac. 734]; *People* v. *Fritz,* 54 Cal. App. 137 [201 Pac. 348].) Instructions should be general. (*People* v. *Lonnen,* 139 Cal. 634, 637 [73 Pac. 586].) The credibility of a witness in a criminal proceeding is a matter to be determined by the jury in arriving at their verdict.

[2] Defendant further complains of failure of the trial court to instruct the jury that if they believed from the evidence that the defendant made a confession, such confession should be received with great caution, and unless supported by other proof in the case tending to convict her of the commission of the crime it was insufficient to convict. It is established in this state that after proof of the *corpus delicti* the confession of a defendant is sufficient to warrant a conviction. (*People* v. *Richardson,* 161 Cal. 552 [120 Pac. 20].) This rule is conceded, but it is claimed that as defendant denied that she made the confession, it has no application here. A confession is not conclusive against an accused. Its weight and credibility as evidence are to be determined by a jury upon the same principles that they determine the weight and credibility of any evidence, that is, upon the consideration of all the circumstances connected therewith. That portion of the instruction that her confession should be received with caution is a comment on the evidence and is objectionable for

reasons heretofore given. The instruction was properly refused.

The next refused instruction complained of relates to the presumption of innocence. The jury was fully and fairly instructed upon this subject. **[3]** It is also urged that the court erred in sustaining objections to questions relating to the birth of one of defendant's children and what her husband did to it on October 2, 1920. The testimony was offered for the purpose of proving the state of mind of the defendant. The homicide, as heretofore stated, occurred on the ninth day of May, 1921, and the court refused to allow the question for the reason that it related to matters too remote. The objections were properly sustained.

No other questions are presented.

For the reasons given the judgment of conviction is affirmed.

Knight, J., *pro tem.*, and Kerrigan, J., concurred.