A petition for a rehearing was denied April 22, 1960.

[Crim. No. 6808. Second Dist., Div. Three. Mar. 24, 1960.]

THE PEOPLE, Respondent, v. PETRA VIGIL, Appellant.

*Assigned by Chairman of Judicial Council.

Cominos & Shostak, Lawrence Shostak and Theodore H. Cominos for Appellant.

Stanley Mosk, Attorney General, and S. Clark Moore, Deputy Attorney General, for Respondent.

VALLÉE, J.—In a nonjury trial defendant was convicted of procuring an abortion. She was sentenced to the institution for women and appeals from the judgment. Her points are that the evidence is insufficient to sustain the judgment and there was insufficient corroboration of the testimony of the prosecutrix.

On May 14, 1958, Mary Lou Samaniego was told by a physician she was pregnant. She was in good health and knew no reason why she could not have a normal childbirth. She had missed three menstrual periods and was "getting large." That evening she met defendant in the Golondrina Café in Pacoima and asked her to "give" an abortion and that she "was hard in disposing of babies." She asked defendant if she would do it for $50. Defendant said she would do it. Later that evening Mary Lou gave defendant $50.

Defendant told her to come to her house the following night, which she did. Defendant had her go into a bedroom, take off her capris and underclothing, and lie on a rug on the floor. Defendant inserted a syringe into Mary Lou's vagina and moved her around so that it would go into the cervix or womb. She felt a liquid go into her and felt pain. During this time a pan was on the floor beside Mary Lou. She lay on the rug three or four minutes and then dressed. Defendant told her to go home and take three bromo-quinines.

On May 19 Mary Lou returned to the café and told defendant nothing had happened. Defendant said she would do it again, to come to her house the following night, which Mary Lou did. Defendant "went through the same operation again." On the way to her home, Mary Lou began to have chills. The next day she had a backache and went to a hospital for three days.

A few days later Mary Lou went to the café and saw defendant. She told defendant she had been in a hospital, nothing had "passed," and she wanted her money back. Defendant returned $30. After this meeting Mary Lou went to a hospital and passed a foetus.

On June 24, 1958, Officer Galindo of the Los Angeles Police Department went to the Golondrina Café and talked to defendant. He told defendant he was Mary Lou's brother; Mary Lou had visited her [defendant] a month or five weeks before; as a result, she was in a hospital. Defendant said she did not know what he was talking about. Galindo said, "The girl that came here is around 23 years of age, and she has brown hair. She was here to see you regarding an abortion. She paid you $50 for the abortion, and since then you have returned $30 to her which happened about two, possibly three weeks ago"; he had just left her at the hospital; she was extremely ill; they were going to have a large hospital bill, and he made the trip to the café to pick up the additional $20. Defendant said, "The girl you are talking about I have already returned $30 to her, and I told her that I would give her back the $20, but she never came back." Galindo said all he wanted was the $20. Defendant stated, "Well, I will give you the $20 on the condition that you give me a solemn promise that you are not going to be bothering me any more." Defendant asked Mary Lou's condition. Galindo said the doctor had told him he had found some "fatty globules in her uterus" and there were "some kind of germs in there." Defendant said, "There shouldn't be any germs. There shouldn't

be any fatty globules of any kind, because the medicine that I used is the purest medicine that there is.'' Galindo asked for some of the medicine so the doctor could analyze it. Defendant said, ''No. As a matter of fact, all I used was pure, clean water.'' Galindo asked her if it would be possible to obtain the instrument she had used. Defendant stated, ''No, because I burn*t* that instrument. I threw it in the incinerator, and it should be burned by now.'' Galindo again asked for the money. Defendant said, ''Well, I will tell you. I will give you your $20 if you give me a solemn oath and swear to God that you will not come back and bother me any more or cause me any trouble of any kind, because, as I told your sister, I was taking a chance in doing it. It is against the law, and I was jeopardizing the license of my cafe. . . . Are you willing to swear to God that you will not cause me any more trouble?'' Galindo said he merely came there to get the $20. Defendant then gave him $20. He then told her she was under arrest for performing abortions.

After the arrest Galindo asked defendant if she had any objection if they went to her home and searched for the syringe. Defendant said, ''Well, you are welcome to come to my house. I am willing to cooperate to the fullest extent. I will help you search but you will not find it because I didn't lie to you. I did destroy it.'' Galindo, his partner, and defendant went to defendant's home in the rear of the café. While in the house Galindo asked defendant to show him where she had obtained the water and the pan she had used. Defendant said it was water out of the faucet, and produced a pan. Galindo asked her to show him where insertion of the liquid had taken place. Defendant pointed to a rug and said Mary Lou had lain on it after she had removed her panties, ''and that she had then given her a douche with that syringe using clear water.'' Galindo asked her how many times that had occurred. Defendant stated ''she had remembered two times, and that both times were within a couple of weeks of each other; the last time having been some three weeks before, and she didn't know the exact date.'' The pan and the rug were introduced in evidence.

Defendant did not testify or offer any evidence in her own behalf other than cross-examination of Mary Lou and Officer Galindo.

[██] The evidence we have recited is manifestly sufficient to sustain the judgment. (*Cf. People* v. *Holbrook,* 45 Cal.2d

228 [288 P.2d 1]; *People* v. *Raffington,* 98 Cal.App.2d 455 [220 P.2d 967]; *People* v. *Pollum,* 97 Cal.App.2d 173 [217 P.2d 463]; *People* v. *Fowler,* 119 Cal.App.2d 657 [260 P.2d 89]; *People* v. *Reed,* 128 Cal.App.2d 499 [275 P.2d 633]; *People* v. *Berger,* 128 Cal.App.2d 509 [275 P.2d 799].) It is argued that the corpus delicti was not established in that a criminal intent on the part of defendant to procure an abortion was not proved. The testimony of Mary Lou detailed the entire offense. Defendant in effect admitted committing the offense. The evidence clearly shows a specific intent to procure an abortion. It is only when the abortee testifies to the connection of the accused with the crime that she must be corroborated in order to justify conviction. (*People* v. *Richardson,* 161 Cal. 552, 563 [120 P. 20]; *People* v. *Ames,* 151 Cal.App.2d 714, 728 [312 P.2d 1111].) It is also argued there was no evidence that defendant had actual knowledge of the pregnancy of Mary Lou or that there existed a belief on her part that Mary Lou was pregnant. The argument is entirely without merit.

 Upon a trial for procuring an abortion the defendant cannot be convicted upon the testimony of the woman upon whom the offense was committed unless she is corroborated by other evidence. (Pen. Code, § 1108.) The corroborating evidence is sufficient if it tends to connect the defendant with the commission of the crime in such a way as may reasonably satisfy the trier of fact that the witness who must be corroborated is telling the truth. The corroborative evidence must be considered without the aid of the testimony which is to be corroborated, and it is not sufficient if it requires the interpretation and direction of such testimony in order to give it value. (*People* v. *MacEwing,* 45 Cal.2d 218, 224-225 [288 P.2d 257]. See *People* v. *Goldstein,* 136 Cal. App.2d 778 [289 P.2d 581], written by Mr. Justice Ashburn, in which the principles governing the nature and sufficiency of corroborative evidence are learnedly discussed.)

 We think the testimony of Officer Galindo meets the test. That an abortion was performed on Mary Lou was conclusively established. Defendant's admissions and her declarations to Officer Galindo constitute corroboration. (*People* v. *Malone,* 82 Cal.App.2d 54, 63-64 [185 P.2d 870] and cases there cited; *People* v. *Garcia,* 90 Cal.App.2d 244, 246 [202 P.2d 762]; *People* v. *Coghlan,* 137 Cal.App.2d 684, 685 [290 P.2d 879].) It is evident from the testimony of Officer Galindo that the trial judge reached the conclusion that de-

fendant in effect had admitted to the officer the true purpose of the treatments she gave Mary Lou. The conclusion was not unwarranted as a matter of law.

The fact that defendant did not testify could have been considered by the trial judge as tending to indicate the truth of the testimony of Mary Lou and Officer Galindo. "While this fact alone does not fill any hiatus in the proof of the prosecution and does not constitute the corroboration required by the statute, it is nevertheless persuasive, lending weight to evidence presented by the prosecution upon matters presumptively within defendant's knowledge, and which if untruly stated would normally be denied by him." (*People* v. *Goldstein,* 136 Cal.App.2d 778, 790-791 [289 P.2d 581].)

 The weight to be given corroborative evidence is a question for the trier of fact to determine. (*People* v. *McNamara,* 103 Cal.App.2d 729, 738 [230 P.2d 411].) The corroboration was sufficient. Considering it without the aid of the testimony of Mary Lou, it tends to connect defendant with the commission of the offense charged in such a way as to reasonably satisfy the trier of fact that she was telling the truth.

Affirmed.

Shinn, P. J., and Ford, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied May 18, 1960. Dooling, J. pro tem.,* participated therein in place of Spence, J.

---

*Assigned by Chairman of Judicial Council.