Filed 11/20/20

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

|  |  |
|---|---|
| THE PEOPLE,<br>    Plaintiff and Respondent,<br><br>v.<br><br>ALBERT ALVIN WILLIAMS,<br>    Defendant and Appellant. | A157917<br><br>(Alameda County<br>Super. Ct. No. 44828) |

Defendant Albert Alvin Williams (Williams) appeals the denial of his Penal Code[1] section 1170.95 [2] petition to vacate his conviction for first degree murder and for resentencing.  We affirm.

**FACTUAL AND PROCEDURAL BACKGROUND**

### I.    Background

The below facts are gleaned from documents in the record (including the information, minute orders for twelve days of trial, and sentencing transcript) along with our prior opinion affirming Williams' murder conviction (*People v. Williams* (Mar. 2, 1971; 1 Crim. No. 8770) [nonpub. opn.] (*Williams I*)).

---

[1]    All further unspecified statutory references are to the Penal Code.

[2]    Section 1170.95 was enacted as part of Senate Bill No. 1437 (Stats. 2018, ch. 1015).

In the early morning hours of February 27, 1969, then 20-year-old Williams and two juvenile accomplices committed an attempted robbery of a delivery milkman in the course of which the milkman was fatally shot. The Alameda County District Attorney filed an information charging Williams with murder (§ 187) without further specification.

Williams was convicted of first-degree murder by a jury that heard testimony from the People's witnesses (including the two juvenile accomplices[3]) and defense witnesses (including Williams); 65 exhibits were introduced into evidence. The jury was instructed on felony murder and murder in the first degree and second degree. During deliberations, the jury, at its request, was reinstructed on first and second-degree murder. After conviction, Williams waived a jury trial on the possible imposition of the death penalty.

At the November 1969 sentencing, the trial court rejected the death penalty and sentenced Williams to life imprisonment with the possibility of parole. The trial court explained that it reviewed the probation report and determined the death penalty was not appropriate as the killing was not deliberate and premeditated, albeit senseless and cruel. Further, although there was "no question" in the trial court's mind that Williams was properly convicted "because the evidence was overwhelming that he was present at the scene and participated in the attempted robbery," the trial court had "some doubt" that Williams "did the actual killing."

---

[3]     By the time of the trial, the charges against the two juvenile accomplices had been resolved in Juvenile Court. They admitted to allegations of acts constituting attempted robbery and were committed to California Youth Authority facilities.

In January 1970, a section 1203.01[4] "Statement by Judge and District Attorney" (hereinafter "1203.01 statement") signed by the trial judge and the deputy district attorney who prosecuted the case was filed by the court clerk.  The trial judge incorporated "by reference" the information and the sentencing transcript as setting forth his view of the case and Williams.  The trial prosecutor stated as follows:

> "This defendant is responsible for a brutal, senseless killing in an aborted robbery where the defendant and two accomplices gained nothing material. The victim was shot and killed while running away from the defendant and his accomplices.  At the time of the murder trial, the defendant had a 459 P.C. pending which was dismissed after his conviction. The defendant should serve maximum time prior to being considered for parole."

The section 1203.01 statement included the following description of the crime.

---

[4]  Section 1203.01, subdivision (a) reads, in pertinent part, "Immediately after judgment has been pronounced, the judge and the district attorney, respectively, may cause to be filed with the clerk of the court a brief statement of their views respecting the person convicted or sentenced and the crime committed, together with any reports the probation officer may have filed relative to the prisoner. The judge and district attorney shall cause those statements to be filed if no probation officer's report has been filed.  The attorney for the defendant and the law enforcement agency that investigated the case may likewise file with the clerk of the court statements of their views respecting the defendant and the crime of which he or she was convicted."  This portion of section 1203.01 essentially reads as it did in 1969 when Williams was sentenced and 1970 when the section 1203.01 statement was filed in this case.  The section 1203.01 statement was filed on behalf of the trial judge and the District Attorney; the record does not indicate whether a section 1203.01 statement was filed by either defense trial counsel or the law enforcement agency that prosecuted the case.

3

"On Thursday, February 27, 1969, at approximately 10:50 a.m., the victim . . . was delivering milk at . . . [a named market.] The victim was a route delivery salesman [for a named milk company]. The victim had just completed his delivery at the above location and had just finished pushing his dolly to the rear of the [parked] delivery truck. . . . It was at this point when he was confronted by the defendant and two juvenile codefendants. [The victim] made an attempt to flee by running [down a street]. There were three shots fired from a .25 [caliber] automatic pistol. The victim was struck once behind the left ear and was, as a result of the impact, knocked to the street.  The victim was found in approximately the middle of [the] [s]treet . . . laying face down. The victim was transported to Highland Hospital and was pronounced dead at approximately 4:00 p.m. the same day he was shot. The three defendants were observed to run westbound . . . and southbound . . . . There was apparently no loss. [¶] The defendant's participation in this offense as a principal was clearly established by the testimony of [two named witnesses] and [two named juvenile accomplices]."

We affirmed the conviction in an unpublished opinion, rejecting Williams' constitutional challenge to the admission of testimony given under a grant of immunity.  (*Williams I*, *supra*, at pp. 1-2; also rejecting challenge to the admission of evidence of witness identifications.)  We found that Williams waived his argument regarding admission of the testimony given under a grant of immunity by failing to raise it to the trial court but also noted that: "the claim on the merits cannot be supported.  The code section, which permits grant of immunity to a witness has repeatedly been held constitutionally valid (e.g. *People v. Boeh[m]* [(1969)] 270 Cal.App.2d 13, 21; *People v. Northrup* [(1962)] 203 Cal.App.2d 470, 474; *People v. Fowler* [(1953)] 119 Cal.App.2d 657, 664) and not subject to either of the attacks here made.  We note that appellant held the murder weapon when it was fired, thus establishing

4

a reasonable basis for prosecuting him alone." (*Williams I*, *supra*, at p. 1.)

After serving seven years in prison, Williams was released on parole. Approximately two years later, in late 1979, he committed another murder. In 1980, Williams was convicted of second-degree murder and sentenced to a life term with the possibility of parole.

## II. Section 1170.95 Proceeding

In March 2019, while serving his life sentence on the 1980 murder conviction, Williams, appearing in propria persona, sought to vacate his 1969 first-degree murder conviction by filing a verified petition under section 1170.95. He averred he was eligible and entitled to relief based on the following "facts" of the case. "In and around February 1969, two guys and myself, were at my home planning a robbery. We did not know what we were going to rob or even where. Across the street from my home was a corner market . . . . When I and my two friends left my home, there was a milk truck double-parked in front of the corner market, and one of my friends said, 'hey, there's a milkman,' and I immediately said 'hell naw man, we can't do nothing there.' But as I was explaining why we won't do anything there, the milk truck driver came out of his truck and the one friend (to my surprise) pulled a gun out to rob him. The milkman tried to run, but he was shot and killed. Weeks later, my two friends were arrested with the weapon that murdered the milkman. April of 1969, a month or so after my two friends, I was arrested and charged with First Degree Murder, there after convicted. On November 4th, 1969, I was sentenced to 'Life' in prison."

Williams asked the superior court to consider two documents attached to his petition: (1) portion of the sentencing transcript in which the trial court had stated the crime " 'was a senseless and cruel killing but . . . not deliberate and premeditated,' " and " 'although there is no question in the Court's mind that the defendant was properly convicted, because the evidence was overwhelming that he was present at the scene and participated in the attempted robbery, the Court does have some doubt that he did the actual killing' "; and (2) portion of a June 4, 2014 decision by former Governor Edmund G. Brown Jr. reversing a favorable parole recommendation of the Board of Parole Hearings (hereinafter "2014 parole denial"), in which the former Governor described the circumstances of the 1969 murder as follows: Williams "and a group of friends were committing a robbery, when one of Mr. Williams' crime partners shot and killed a milkman."

The People filed an opposition and attached the sentencing transcript, the section 1203.01 statement (opining it was "a reasonably reliable account of the evidence presented at trial"), and a copy of our prior opinion in *Williams I.* Williams conceded *Williams I* was part of the record of conviction but sought, on hearsay grounds, exclusion of any facts mentioned in the opinion.

The superior court held a contested hearing in July 2019. Without objection, the superior court took judicial notice of the documents relating to the section 1170.95 petition and the 67 microfilmed pages of the court file relating to the murder conviction, and expressly admitted as exhibits: (1) the sentencing transcript (Exhibit 1); (2) the section 1203.01 statement (Exhibit 2); (3) *Williams I* (Exhibit 3); (4) defense counsel's written evidentiary objection to a

6

portion of *Williams I* (Exhibit A); (5) the 2014 parole denial (Exhibit B); and (6) the section 1170.95 petition filed by Williams (Exhibit C).

Following argument by counsel and after consideration of the factors in *People v. Clark* (2016) 63 Cal.4th 522 (*Clark*) and *People v. Banks* (2015) 61 Cal.4th 788 (*Banks)*, the superior court found Williams was not eligible for resentencing because he could have been found guilty of first-degree murder under the newly amended section 189 as a major participant who acted with reckless indifference to human life in the commission of the felony murder. Williams "was the oldest of the three defendants. He was an adult. The others were juveniles. He was 20 years old at the time. They had to be under the age of 18. He indicated in his petition that he planned the robbery with those two, that that occurred at his house. They left the house with a loaded gun. He went with the others to look for a victim. He was present at the scene. He held the gun when it was discharged. The gun was pointed at the head of the fleeing victim. He was certainly in a position to prevent the murder, given his presence at the scene. He fled afterwards. Took no steps to minimize the risk of harm to the victim, and took no steps to help the victim after the victim was shot down on the street."

In ruling on evidentiary objections, the superior court expressly found reliable the facts of the crime mentioned in *Williams I*, impliedly found reliable the facts of the crime mentioned in the section 1203.01 statement, and expressly found not reliable the facts of the crime mentioned in the 2014 parole denial.

Williams filed a timely notice of appeal from the July 25, 2019 order denying his section 1170.95 petition.

7

We conclude the superior court did not err as the hearsay contained in *Williams I* and the section 1203.01 statement were reliable and therefore could be considered. Further, there was substantial evidence supporting the finding that Williams was not eligible for resentencing as he was a major participant in the underlying felony and acted with reckless indifference to human life.

## I.    Legal Framework

Senate Bill No. 1437, effective January 1, 2019, in pertinent part, amended sections 188 and 189 concerning murder under the felony murder theory "to provide for liability only where the defendant (1) actually killed the victim; (2) aided in the murder with intent to kill; or (3) *'was a major participant in the underlying felony and acted with reckless indifference to human life, as described in subdivision (d) of Section 190.2.'* (*Ibid.*; § 189, subd. (e), italics added.) We emphasize the last clause because it is central to this appeal." (*People v. Douglas* (2020) 56 Cal.App.5th 1, 7 (*Douglas*).) It did not modify section 190.2 which provides, in part, that participating in a murder during a robbery may be punished by death or life imprisonment without parole "only if [the defendant] acted 'with reckless indifference to human life and as a major participant' to a qualifying felony like robbery." (*Douglas, supra,* p. 7.)

Senate Bill No. 1437 also added section 1170.95, which permits, in pertinent part, an individual convicted of murder under a felony murder theory to petition the sentencing court to vacate the conviction and be resentenced only "if three conditions are met: (1) the prosecution proceeded under a felony-murder theory; (2) the petitioner was

8

convicted of first degree murder following a trial; and (3) the petitioner could not be convicted of first degree murder because of changes to section 188 or 189 made effective January 1, 2019. (§ 1170.95, subd. (a)(1)-(3).)" (*People v. Howard* (2020) 50 Cal.App.5th 727, 735 (*Howard*).)

The superior court reviews a section 1170.95 petition to determine whether petitioner has made a prima facie showing of eligibility for relief. (§ 1170.95, subd. (c).) "If the petitioner makes such a showing, the trial court must hold a hearing " 'to determine whether to vacate the murder conviction and to recall the sentence and resentence the petitioner on any remaining counts in the same manner as if the petitioner had not been previously [ ] sentenced, provided that the new sentence, if any, is not greater than the initial sentence.' (§ 1170.95, subd. (d)(1).)" (*Howard, supra*, 50 Cal.App.5th at p. 735.)

"At the eligibility hearing, 'the burden of proof shall be on the prosecution to prove, beyond a reasonable doubt, that the petitioner is ineligible for resentencing. If the prosecution fails to sustain its burden of proof, the prior conviction, and any allegations and enhancements attached to the conviction, shall be vacated and the petitioner shall be resentenced on the remaining charges. The prosecutor and the petitioner may rely on the record of conviction or offer new or additional evidence to meet their respective burdens.' (§ 1170.95, subd. (d)(3).)" (*Howard, supra*, 50 Cal.App.5th at p. 736.)

## II. Evidentiary Rulings

Williams avers the superior court erred in its determination that it could consider reliable hearsay in *Williams I* and the section 1203.01 statement. We disagree.

9

Section 1170.95 provides the People "an opportunity to present *new and additional evidence* to demonstrate the petitioner is not [eligible for] resentencing, and the petitioner is afforded the opportunity to *present new and additional evidence* on his or her behalf as well, before the court determines the appropriate relief. (§ 1170.95, subd. (d)(3).)" (*People v. Anthony* (2019) 32 Cal.App.5th 1102, 1153 (*Anthony*); italics added.) We therefore focus our analysis on whether *Williams I* and the section 1203.01 statement are admissible as such new and additional evidence. [5]

---

[5]  As new and additional evidence is permissible, we decline to address whether *Williams I* and the section 1203.01 statement should be considered part of the "record of conviction." We do note that Williams concedes he is "swimming against the tide" by advancing a challenge to the admission of our prior opinion in *Williams I* in light of current case law allowing a superior court to rely on an appellate court opinion to summarily deny a petition on the ground a petitioner has not met his prima facing showing of eligibility under section 1170.95. (See *People v. Edwards* (2020) 48 Cal.App.5th 666, 674-675, rev. granted July 8, 2020, S262481, citing, among other cases, *People v. Verdugo* (2020) 44 Cal.App.5th 320, 333-334, rev. granted Mar. 18, 2020, S260493 [superior court could rely on appellate court opinion in summarily denying section 1170.95 petition]; *People v. Lewis* (2020) 43 Cal.App.5th 1128, 1137-1138 (*Lewis*), rev. granted Mar. 18, 2020, S260598 [same]; but see *People v. Cooper* (2020) 54 Cal.App.5th 106, 123-126, rev. granted Nov. 10, 2020, S264684] [superior court committed prejudicial error in summarily denying section 1170.95 petition where record of conviction (information, plea, preliminary hearing transcript) did not show petitioner's ineligibility for relief as a matter of law].) Currently pending for review before our Supreme Court is the following issue: "May superior courts consider the record of conviction in determining whether a defendant has made a prima facie showing of eligibility for relief under Penal Code section 1170.95?" (See *Lewis, supra,* 43 Cal.App.5th 1128, rev. granted Mar. 18, 2020, S260598 [lead case].)

Williams contends the People's ability to present new and additional evidence is constrained by the Evidence Code's limitations on the admissibility of hearsay evidence. However, the cases Williams relies upon do not support his position as they concern the rules of evidence applicable at trials on criminal charges and prior conviction allegations for the purpose of sentence enhancements in initial criminal prosecutions. (See *People v. Covarrubias* (2016) 1 Cal.5th 838, 886-887; *People v. Sanchez* (2016) 63 Cal.4th 665, 686, 694-695; *People v. Miles* (2008) 43 Cal.4th 1074, 1082; *People v. Trujillo* (2006) 40 Cal.4th 165, 178-180; *People v. Woodell* (1998) 17 Cal.4th 448, 455-457, 459; *People v. Reed* (1996) 13 Cal.4th 217, 222-223, 228 fn. 8, 230; *People v. Guerrero* (1988) 44 Cal.3d 343, 355, 356, fn. 1; see *Melendez-Diaz v. Massachusetts* (2009) 557 U.S. 305, 322; *Davis v. Washington* (2006) 547 U.S. 813, 826; *Shepard v. United States* (2005) 544 U.S. 13, 16, 23, 26.)

In contrast, a "hearing under section 1170.95 is not a trial *de novo* on all the original charges." (Couzens, et al., Sentencing Cal. Crimes (The Rutter Group 2019) [¶] 23.51(J)(4).) Rather, it is a *post-conviction* proceeding "due to the Legislature's inclusion of section 1170.95 in Senate Bill No. 1437, [as] an 'act of lenity' . . . allowing for the retroactive application of the new law governing accomplice liability for felony murder . . . for defendants already serving valid sentences for murder." (*People v. Wilson* (2020) 53 Cal.App.5th 42, 53 (*Wilson*), quoting in part *Anthony, supra,* 32 Cal.App.5th at p. 1153.) In allowing for the section 1170.95 post-conviction proceeding, the Legislature gave the superior court unfettered discretion to consider "evidence" without any restriction at the subdivision (d)(3) hearing to determine the

11

petitioner's eligibility for resentencing.  (See *People v. Roach* (2016) 247 Cal.App.4th 178, 185 ["[a]dditional restrictions on a trial court's authority at resentencing could have been included in section 1170.18, but were not"].)

Hence, the rules of evidence governing a section 1170.95 subdivision (d)(3) hearing should be no different than those applied at other analogous post-conviction resentencing proceedings.  "A contrary interpretation would require us to add words to section 1170.95 that do not currently exist.  We will not do this, as we are to ascertain and declare 'what the statute contains, not to change its scope by reading into it language it does not contain . . . . We may not rewrite the statute to conform to an assumed intention that does not appear in its language.' "  (*Wilson, supra*, 53 Cal.App.5th at p. 52, quoting *Vasquez v. State of California* (2008) 45 Cal.4th 243, 253.)

Accordingly, the superior court here was permitted to consider hearsay such as that found in our prior opinion in *Williams I* and the section 1203.01 statement, "provided there is a substantial basis for believing the hearsay information is reliable."  (See *People v. Sledge* (2017) 7 Cal.App.5th 1089, 1094-1095 (*Sledge*) [rejecting similar argument, concluding that reliable hearsay may be considered to resolve Proposition 47 (Safe Neighborhoods and Schools Act) petition to dismiss or resentence defendant after reduction of felony conviction to misdemeanor]; *People v. Saelee* (2018) 28 Cal.App.5th 744, 756 [rejecting similar argument, concluding reliable hearsay may be considered to resolve Proposition 64 (Control, Regulate and Tax Adult Use of Marijuana Act) petition to dismiss or resentence defendant after reduction of felony marijuana conviction to misdemeanor]; see also

12

*People v. Guilford* (2014) 228 Cal.App.4th 651, 660-661 [prior appellate court opinion, although hearsay, was admissible to resolve Proposition 36 (Three Strikes Reform Act of 2012) petition to recall and reduce sentence imposed on third-strike conviction].)

We conclude the superior court had a substantial basis for believing the hearsay information to be reliable. As to *Williams I*, it was reasonable for the superior court to assume we had accurately summarized the record. As the superior court found, the quoted statement (appellant held the murder weapon when it was fired) gave "a factual context" to our "ruling on the immunity issue." As to the 1203.01 statement, it was "meant as a substitute for probation reports" as "a factual summary of the trial for the . . . use by the Department of Corrections and the parole authority," and section 1203.01 "explicitly require[d] the judge and the [District Attorney], if no probation report [was] prepared, to file it," and gave defendant a "full opportunity . . . also to file a [section] 1203.01 statement," thereby giving him "more opportunity . . . to participate in that process than a current probation report. . . ." Hence, the superior court reasonably found the hearsay contained therein to be reliable. [6]

Accordingly, we see no impropriety or fundamental lack of fairness in the superior court's admission and reliance on the hearsay information in *Williams I* and the section 1203.01 statement.

_____

[6]   Williams cites no legal authority for his contention that the hearsay in the section 1203.01 statement was rendered unreliable because its filing was a discretionary decision on the part of the trial judge and the trial prosecutor. (See *Dills v. Redwoods Associates, Ltd.* (1994) 28 Cal.App.4th 888, 890, fn. 1 ["we may disregard conclusory arguments that are not supported by pertinent legal authority"].)

13

### III. Sufficiency of the Evidence

" 'Where the trial court applies disputed facts' " to a statute, " 'we review the factual findings for substantial evidence and the application of those facts to the statute de novo.' " (*Sledge, supra,* 7 Cal.App.5th at pp. 1095-1096 [applying substantial evidence review to factual findings that petitioner was ineligible for reduction of felony conviction to misdemeanor under Proposition 47 (Safe Neighborhoods and Schools Act)]; see *People v. Perez* (2018) 4 Cal.5th 1055, 1059, 1066 [applying substantial evidence review to factual findings that petitioner was ineligible for resentencing under Proposition 36 (Three Strikes Reform Act of 2012)].)

The scope of our review for substantial evidence is well settled. The test is not whether the People met their burden of proving beyond a reasonable doubt that Williams was ineligible for resentencing, but rather "whether *any* rational trier of fact could have" made the same determination, namely that "[t]he record . . . disclose[s] . . . evidence that is reasonable, credible, and of solid value—such that a reasonable trier of fact could find [as did the superior court]. [Citation.] In applying this test, we review the evidence in the light most favorable to the prosecution and presume in support of the [order] the existence of every fact the [superior court] could reasonably have deduced from the evidence. [Citation.] 'Conflicts [in the evidence] . . . subject to justifiable suspicion do not justify the reversal of a judgment, for it is the exclusive province of the trial judge . . . to determine the . . . truth or falsity of the facts upon which a determination depends. [Citation.]" (*People v. Zamudio* (2008) 43 Cal.4th 327, 357.)

Here, the superior court correctly followed our high court's recent decisions examining the circumstances under which murderers and accomplices can be punished by death or life imprisonment without parole based on a section 190.2 special circumstance finding. (See *Clark*, *supra*, 63 Cal.4th at pp. 618-623; *Banks*, *supra*, 61 Cal.4th at p. 803.) When assessing a section 190.2 special circumstance finding regarding the components of "major participant" and "reckless indifference," we consider various overlapping factors, including: "What role did the defendant have in planning the criminal enterprise that led to one or more deaths? What role did the defendant have in supplying or using lethal weapons? What awareness did the defendant have of particular dangers posed by the nature of the crime, weapons used, or past experience or conduct of the other participants? Was the defendant present at the scene of the killing, [in proximity to or] in a position to facilitate or prevent the actual murder [or aid the victim,] and did his or her own actions or inaction play a particular role in the death? What did the defendant do after lethal force was used?" (*Banks*, *supra*, 61 Cal.4th at p. 803; see *Clark*, *supra*, 63 Cal.4th at pp. 618-623.) However, the Supreme Court has made clear that " '[n]o one of these considerations is necessary, nor is any one of them necessarily sufficient.' " (*Clark*, *supra*, 63 Cal.4th at p. 618, quoting *Banks*, *supra*, 61 Cal.4th at p. 803.)

The record shows the superior court relied on several factors that our high court has considered significant, including that the robbery was planned at the home of an adult Williams with the assistance of two juvenile accomplices. The superior court also noted that Williams held the murder weapon (which contained at least three bullets) at the

15

time it was fired and hence could reasonably infer that Williams had a reasonable expectation that a death could result. (*Clark*, *supra*, 63 Cal.4th at p. 618.) Whether Williams was the actual shooter, or held the gun shortly before or shortly after it was fired, he was present in sufficient proximity " 'to observe his cohorts so that it is fair to conclude that he shared in their actions and mental state. . . . [Moreover,] [his] presence [gave] him an opportunity to act as a restraining influence" on both the attempted robbery and his juvenile accomplices. (*Id.* at p. 619 [" '[i]f the defendant fails to act as a restraining influence, then the defendant is arguably more at fault for the resulting murder[]' "].) Additionally, Williams admitted that after the shooting he and his accomplices fled the scene, from which the superior court could reasonably infer he did not call for assistance or attempt to render aid to the victim who did not die at the scene of the shooting. [7]

Thus, substantial evidence supports the superior court's finding that Williams was not eligible for resentencing because he was a major participant in the attempted robbery and acted with reckless indifference to human life during the commission of the felony murder. In so holding, we reject Williams' portrayal of the evidence in the light

_____

[7] Williams claims the analysis in *In re Taylor* (2019) 34 Cal.App.5th 543 applies to his circumstances. However, that case is clearly factually inapposite. The appellate court there held only that the defendant's failure to come to the victim's aid, standing alone, was not sufficient to establish he knowingly created a grave risk of death where the defendant was the getaway driver who stayed in the car and did not see the shooting, had no opportunity to prevent the shooting and may not have appreciated how badly the victim was wounded, and left the scene only when he saw help was coming to the victim. (*Id.* at pp. 546-547, 557-559.)

most favorable to himself as "that showing is largely irrelevant to the issue on appeal [of] whether the evidence in [the People's] favor provides a sufficient basis for [the superior court's] findings. [Williams'] . . . factual presentation is but an attempt to reargue on appeal those factual issues decided adversely to [him] at the trial level, contrary to established percepts of appellate review." (*Hasson v. Ford Motor Co.* (1982) 32 Cal.3d 388, 398-399.)

## DISPOSITION

The July 25, 2019 order denying the Penal Code section 1170.95 petition is affirmed.

17

_____

Petrou, J.

WE CONCUR:

_____

Fujisaki, Acting P.J.

_____

Jackson, J.

*A157917/People v. Williams*

Trial Court:        Alameda County Superior Court

Trial Judge:        Hon. Morris Jacobson

Counsel:            Office of Attorney General, Xavier Becerra, Attorney
                    General, Lance E. Winters, Chief Assistant Attorney
                    General, Jeffrey M. Laurence, Senior Assistant Attorney
                    General, Rene Chacon, Supervising Deputy Attorney
                    General, Bruce Ortega, Deputy Attorney General, for
                    Plaintiff and Respondent.

                    First District Appellate Project, Kyle Gee, for Defendant
                    and Appellant.